F I L E D
Clerk
District Court

APR 07 2016

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

*In re* Application of

THE GOVERNMENT OF THE LAO
PEOPLE'S DEMOCRATIC REPUBLIC,

         Applicants,

For an Order Pursuant to the United Nations
Convention Against Corruption and 28 U.S.C.
Section 1782 For Leave to Obtain Discovery
from Bridge Capital LLC, John K. Baldwin,
David Jensen, and the First Hawaiian Bank,
Saipan, MP for Use in Foreign Proceedings,

         Respondents.

Case 1:15-MC-00018


**DECISION AND ORDER DENYING
APPLICATION FOR ISSUANCE
OF SUBPOENAS**

## I.    INTRODUCTION

The Government of the Lao People's Democratic Republic ("GOL") filed an application to obtain discovery from Bridge Capital LLC, John K. Baldwin, David Jensen, and the First Hawaiian Bank ("FHB") in Saipan, Commonwealth of the Northern Mariana Islands, pursuant to 28 U.S.C. § 1782, for use in private international commercial arbitration and its own criminal bribery and tax evasion investigation. (ECF No. 1; Memo. in Support, ECF No. 20.) Bridge Capital opposes the application. (Opp'n, ECF No. 31.) The parties appeared for oral argument on December 7, 2015. (Min. Entry, ECF No. 34.) While the matter under advisement, GOL submitted supplemental evidence in support of its position (ECF No. 36), Bridge Capital filed a motion to strike the supplemental evidence for failure to comply with this Court's local rules (ECF No. 37), GOL filed a motion for leave to file the supplemental evidence (ECF No. 39), and GOL filed yet another motion for leave to supplement the record with additional materials (ECF No. 41). The

Court has reviewed each of the filings, but is not persuaded that the supplemental materials will aid it in deciding this matter, and accordingly grants Bridge Capital's motion to strike GOL's submission of supplemental evidence (ECF No. 37) and denies GOL's motions for leave to file supplemental materials (ECF Nos. 39 and 41). For the following reasons, the Court denies GOL's application for discovery.

## II.     BACKGROUND

GOL's application relates to the ongoing breakup of its partnership with Sanum Investments Limited ("Sanum") and Lao Holdings, N.V. ("Lao Holdings") over the Savan Vegas, a casino and resort in Laos. Respondent John K. Baldwin owns 50 percent of the shares of Lao Holdings, a Netherlands entity, which in turn is the sole owner of Sanum, an entity organized under the laws of the Special Administrative Region of Macau, China. The Savan Vegas was a joint venture in which Sanum and Lao Holdings owned 80 percent of the casino and GOL owned the remaining 20 percent.[1]

The Savan Vegas partnership began in 2007. In connection with Sanum and Lao Holdings' investments, GOL granted several benefits to the Savan Vegas, including a low flat tax rate and a monopoly on casino gambling in its area of operation. However, by 2012 the parties found themselves in disagreement regarding many aspects of the arrangement. Sanum and Lao Holdings filed arbitration complaints pursuant to bilateral investment treaties ("BITs") between GOL and China, and GOL and the Netherlands, respectively.

In June 2014, the parties settled the BIT arbitrations. (Opp'n Ex. A-3, "Deed of Settlement," ECF No. 31-4.) The settlement agreement called for Sanum and Lao Holdings to sell off their interest in the Savan Vegas while allowing those entities to escape certain tax liabilities alleged by GOL. Furthermore, the agreement specified that GOL "shall discontinue the current

---

[1] The parties disagree over the nature of Bridge Capital's connection to the Savan Vegas: GOL asserts that Bridge Capital is funding Sanum's investments in Laos, but Bridge denies the charge. Respondent David Jensen was the CFO of Bridge Capital at the time GOL filed its application, but he has since left the company. Respondent First Hawaiian Bank is Bridge Capital's bank.

criminal investigations against Sanum / Savan Vegas and its management or other personnel and shall not reinstate such investigations provided that the terms and conditions agreed herein are duly and fully implemented by [Sanum and Lao Holdings]." (Deed of Settlement ¶ 23.)

However, shortly after the agreement was finalized, Sanum and Lao Holdings attempted to reopen the BIT arbitration, alleging that GOL had materially breached the settlement agreement. For its part, GOL initiated a separate arbitration in the Singapore International Arbitration Centre ("SIAC") pursuant to the settlement agreement itself. Sanum and Lao Holdings were unsuccessful in their bid to reopen the BIT arbitration, but in November 2015 sent a letter to GOL warning that another attempt would be made if GOL refused to comply with the terms of the settlement. ("Sanum Letter," ECF No. 32-1.) The record does not indicate that Sanum and Lao Holdings followed through on the threat, and Bridge Capital declined to say at oral argument whether a revival of the BIT arbitration would actually be sought. Meanwhile, the SIAC arbitration is pending, and GOL reinitiated its criminal bribery and tax evasion investigation.

## III.    DISCUSSION

GOL seeks discovery to use in conjunction with the SIAC arbitration and its criminal bribery and tax evasion investigation. GOL argues that it is entitled to the discovery under the United Nations Convention Against Corruption ("UNCAC" or "Convention") and 28 U.S.C. § 1782. Bridge Capital makes three principal arguments against GOL's application: (1) the Convention does not grant a freestanding right to discovery, but rather applies through § 1782; (2) the application fails to satisfy the threshold requirements of that statute; and (3) discretionary factors weigh against granting discovery in this case. The Court agrees with Bridge Capital.

### A.    The U.N. Convention Against Corruption Grants No Independent Right to Discovery

The Convention provides that "State Parties shall afford one another the widest measure of mutual legal assistance in investigations, prosecutions, and judicial proceedings in relation to the offences covered by this Convention." UNCAC art. 46, ¶ 1. The Senate approved the Convention

on September 15, 2006, and it therefore became the law of land in the United States. *See* USA UNCAC Self-Assessment 2, ://www.state.gov/documents/organization/158105.pdf. However, as the State Department's Self-Assessment itself points out, the Convention lacks a specific mechanism to implement its mutual legal assistance provisions. *Id.*; *see* UNCAC art. 46, ¶ 2 ("Mutual legal assistance shall be afforded to the fullest extent possible *under relevant laws, treaties, agreements, and arrangements of the requested State Party* . . . ") (emphasis added). Instead, the UNCAC is implemented in the United States through preexisting law: 28 U.S.C. § 1782. *See* USA UNCAC Self-Assessment 218 (noting that the United States provides legal assistance in part through § 1782). Accordingly, any obligations of the United States under the Convention are satisfied by applying 28 U.S.C. § 1782.

Citing a recent Ninth Circuit case, *In re Premises Located at 840 140th Ave. NE, Belleville Wash.*, GOL argues that the Convention eliminates the need for compliance with the substantive limitations of 28 U.S.C. § 1782. (Memo 6.) That assertion overstates the case's holding: the Ninth Circuit did not analyze the Convention, but rather a mutual legal assistance treaty ("MLAT") between the United States and Russia. *In re 840 140th Ave. NE*, 634 F.3d 557, 563-64 (9th Cir. 2011) (stating that MLATs are "bilateral treaties" that "represent a *direct* approach to achieving reciprocity with other nations, in addition to the *indirect* approach taken by congressional expansion of the scope of § 1782" (emphasis in original)). The Ninth Circuit held that, based on the language and structure of the US-Russia MLAT, the *procedural* mechanism of § 1782 applied to Russian requests for assistance, but the *substantive* limitations and judicial discretion of § 1782 did not apply. *Id.* at 571, 570 (noting that Article 4 of the US-Russia MLAT specified only three grounds for denying a request, unlike the vast discretion afforded district courts under § 1782).

Here, unlike the US-Russia MLAT, there is no direct bilateral treaty between GOL and the United States. Furthermore, GOL points to no language within the Convention that purports to limit the discretion of courts applying § 1782, as Article 4 of the US-Russia MLAT did. *See In re 840 140th Ave. NE*, 634 F.3d at 570. Indeed, as the State Department's Self-Assessment makes

clear, the Convention's mutual assistance provision applies through, but does not change, preexisting law. *See* USA UNCAC Self-Assessment 2, 218. Moreover, GOL has not presented a single case in which any court held that it lacked discretion to deny a § 1782 request for discovery from a UNCAC party, even though the United Nations reports that the Convention has 178 parties. *See* ://www.unodc.org/unodc/en/treaties/CAC/signatories.html. The Court will therefore apply § 1782 without eliminating the substantive requirements as urged by GOL.

### B. GOL Cannot Meet the Requirements of 28 U.S.C. § 1782

A district court may order discovery if three conditions are met: (1) the person or entity from whom discovery is sought resides in or can be found in the court's district; (2) the application is made by a foreign or international tribunal or "any interested person"; and (3) the discovery is "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782.

Bridge Capital argues that GOL cannot satisfy the third condition because (1) the SIAC arbitration is not a "proceeding in a foreign or international tribunal," and (2) the discovery cannot be "for use" in the SIAC arbitration or the alleged criminal investigation. (Opp'n 12-17.) GOL responds that district courts are split on whether "foreign or international tribunal" covers private arbitral bodies, such as the SIAC, and nothing prevents discovery from being used by either the SIAC panel or the GOL criminal investigation team. (Reply 3-6, 8-9.)

GOL also asserts in its reply that the Sanum Letter means a BIT arbitration revival is imminent, and argues that discovery could be ordered for use by the BIT arbitral panel. (Reply 7-8.) GOL is correct that BIT panels, as creatures of government treaties, satisfy the international tribunal requirement of § 1782. *See In re Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) (observing that an arbitral body established by an international treaty is distinguishable from a tribunal established by private parties and is an "international tribunal"). Although the argument was raised for the first time in GOL's reply, and Bridge Capital declined to state at oral argument

whether Sanum and Lao Holdings intended to reopen the BIT arbitration, the Court will nevertheless address the issue for the sake of clarity. *Cf. FT Travel—New York, LLC v. Your Travel Center, Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) ("Courts decline to consider arguments that are raised for the first time in reply."). Consideration of the BIT arbitration, however, does not change the Court's ultimate disposition of this matter.

There is no question that the first two statutory elements of GOL's § 1782 application are satisfied: Bridge Capital, FHB, Baldwin, and Jensen can all be found within this district, and GOL, as a party to the Singapore arbitration and the prosecuting authority in the criminal investigation, certainly qualifies as an "interested person." *See* 28 U.S.C. § 1782. This opinion focuses on the third element: whether the discovery will be "use[d] in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782. The Court finds that GOL can satisfy neither the "international tribunal" requirement for SIAC, nor the "use" requirement for the alleged criminal investigation or the BIT arbitration.

1) <u>Private Arbitral Bodies Are Not "Foreign or International Tribunals" for Purposes of § 1782</u>

This case requires the Court to determine whether private arbitral bodies are included within § 1782's gamut as foreign or international tribunals. Analysis of this issue is complicated by the dearth of appellate caselaw. Only two circuit courts have reached the issue: the Second and the Fifth Circuits. Both courts agreed that Congress did not intend to include private arbitration within the scope of § 1782. *See National Broadcasting Co. v. Bear Sterns & Co.*, 165 F.3d 184, 188 (2d Cir. 1999) (hereafter "*NBC*"); *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881 (5th Cir. 1999). However, subsequent to those decisions, the Supreme Court issued its seminal case on § 1782—*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (Ginsburg, J.)—which somewhat broadened the scope of the statute. In the wake of *Intel*, some district courts have held that *NBC* and *Biedermann* were impliedly abrogated, and have gone on to grant § 1782

discovery for parties in proceedings before private arbitral bodies. *See, e.g.*, *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238 (D. Mass. 2008). This Court does not agree that *Intel* abrogated *NBC* and *Biedermann*, and instead holds that private arbitral bodies are categorically excluded from § 1782's coverage. In so holding, the Court reaches the same conclusion as each of the district courts in the Ninth Circuit that have addressed the issue. *See In re Dubey*, 949 F. Supp. 2d 990, 993 (C.D. Cal. 2013); *In re Grupo Unidos Por El Canal S.A.*, No. 14-mc-80277-JST, 2015 WL 1815251, at *8 (N.D. Cal. Apr. 21, 2015).

In *NBC,* the Second Circuit held that § 1782 "does not apply to proceedings before private arbitral panels." 165 F.3d at 188. The court began its analysis with the plain language of the statute. *Id.* Because the term "foreign or international tribunal" is not defined by § 1782, the Second Circuit applied the ordinary meaning of the term and concluded that it was ambiguous because it could support either interpretation. *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)). Turning to legislative history, the Second Circuit noted that, prior to 1964, the statute did not include assistance to *international tribunals*, but only *courts* in a foreign country. 165 F.3d at 189. In other words, § 1782's predecessor statutes made judicial assistance exclusive to government entities— courts. The word "tribunal" was chosen so that "the court [would] have discretion to grant assistance when proceedings are pending before investigating magistrates in foreign countries." 165 F.3d at 189 (citing the House and Senate Committee Reports; internal quotation marks omitted). The Second Circuit observed that "it is apparent in context that the authors of [the congressional reports] had in mind only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state." *Id.* Noting the significance of the absence of any legislative discussion regarding private arbitral bodies, the Second Circuit found that "there is no indication that Congress intended for the new provisions to reach private international tribunals." *Id.* at 190 ("The legislative history's silence with respect to private tribunals is especially telling because we are confident that a significant congressional expansion of American judicial assistance to international arbitral panels created exclusively by

private parties would not have been lightly untaken by Congress without at least a mention of this legislative intention.").

In *Biedermann*, the Fifth Circuit likewise determined that § 1782 did not apply to private arbitral bodies. 168 F.3d 880, 881 (5th Cir. 1999). Agreeing with the Second Circuit, the Fifth Circuit also found significant the lack of any legislative history suggesting that the 1964 revisions to § 1782 would include private international arbitration. 168 F.3d at 882.

Both *NBC* and *Biedermann* were decided before the Supreme Court addressed § 1782. In *Intel*, the Supreme Court held that the Directorate-General for Competition of the Commission of the European Communities (the "Commission") was an international tribunal under § 1782. 542 U.S. at 246–47, 254 (stating that the Commission is charged with investigating alleged violations of the European Union's competition prescriptions). *Intel* compared the function of the Commission to that of a court. The Commission adjudicates disputes in the first instance, it weighs evidence to determine liability and penalties, and issues decisions subject to judicial appellate review. 542 U.S. at 255 n.9. With those quasi-judicial features in mind, the Supreme Court found that the Commission was an international tribunal within the scope of § 1782. *Id.* at 258.

Like *NBC* and *Biedermann*, the Supreme Court referred to the 1964 legislative history, which recommended changing the law "for the rendering of assistance to foreign courts *and quasi-judicial agencies*." 542 U.S. at 257–58 (emphasis in opinion). In a parenthetical citation, the Court also referenced a 1965 article by Professor Hans Smit, "International Litigation under the United States Code" ("International Litigation"), which stated that "the term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts." 542 U.S. at 258.[2]

Courts that have decided post-*Intel* that § 1782 includes international private arbitral panels have focused on the Supreme Court's functional analysis. *See In re Babcock Borsig AG*, 583 F.

---

[2] Professor Smit directed a project at the Columbia University School of Law that aided a congressional commission studying American judicial assistance to international bodies. That commission ultimately proposed what became § 1782. *See NBC*, 165 F.3d at 188–90.

Supp. 2d 233, 238 (D. Mass. 2008) (noting that the private arbitral panel had much in common with the Commission of *Intel* because it was a first-instance decision maker and had the authority to determine liability and bind the parties). Those courts have also tended to take a broader view of "tribunal" consistent with Professor Smit's "International Litigation." *See Hallmark Capital*, 534 F. Supp. 2d at 954–55 ("'Had Congress wanted to impose the limitation advanced by [the party opposing extension of § 1782 to private arbitration bodies], it would have been a simple matter to add the word 'governmental' before the word 'tribunal' in the 1964 amendment.'" (quoting *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1226 n.3 (N.D. Ga. 2006))).

On the other hand, district courts that have decided that *Intel* does not mandate treating private arbitral bodies as tribunals under § 1782 focus on the absence of any statement of the Supreme Court to that effect. *See Grupo Unidos*, 2015 WL 1815251, at *8 ("Two words from a law review article quoted by the Supreme Court in support of a different proposition have spawned disharmony in the courts regarding whether Section 1782 applies to private arbitrations established by contract."); *In re Finserve Group Ltd.*, No. 4:11-mc-2044-RBH, 2011 WL 5024264, at *2 (D.S.C. Oct. 20, 2011) (observing that in *Intel* the Supreme Court deleted that part of Smit's definition of "tribunal" that included "all bodies exercising adjudicatory powers" (internal quotation marks omitted)). Moreover, the 1964 legislative history is as silent on private arbitral bodies now as it was when *NBC* and *Biedermann* were decided. *See In re Arbitration in London, England*, 626 F. Supp. 2d 882, 886 (N.D. Ill. 2009) ("I generally agree with the conclusion of the Second and Fifth Circuits that the legislative history of § 1782 does not support inclusion of private arbitral tribunals within the scope of § 1782(a)"). Indeed, in an unpublished opinion, the Fifth Circuit declined to revisit *Biedermann* because *Intel* effectively left its rationale unchanged. *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 34 (5th Cir. 2009).

Courts that have followed *NBC* and *Biedermann* have the better of the arguments. The term "international tribunal" is ambiguous with respect to arbitration. Based on both the history of

judicial assistance to foreign nations and the specific legislative history of the 1964 amendments, it is clear that if Congress had meant to broaden § 1782 to include private arbitral bodies, it would have done so expressly. *See NBC*, 165 F.3d at 189; *Grupo Unidos*, 2015 WL 1815251, at *8. Prior to the 1964 amendments, judicial assistance pursuant to § 1782 had been limited to *governments,* specifically courts. *See Intel*, 542 U.S. at 249 ("Congress deleted the words 'in any judicial proceeding *pending* in any court in a foreign country,' and replaced them with the phrase 'in a proceeding in a foreign or international tribunal'" (emphasis in original)). Because the legislative history referred *only* to extending § 1782 coverage beyond "conventional courts" to proceedings before governmental units, i.e., "before investigating magistrates in foreign countries," "foreign administrative tribunal[s] or quasi-judicial agenc[ies]," and "international tribunals and litigants before such tribunals," there is no reason to depart from the prior understanding of the statute that judicial assistance of United States courts is limited to state-sponsored proceedings. *See* S. Rep. No. 88-1580, *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788. Congress's decision not to expressly depart from § 1782's pre-1964 limitation to state-sponsored proceedings, particularly in light of the legislative history's silence, means that Congress intended to maintain the status quo. *Cf. Roz Trading*, 469 F. Supp. 2d at 1226 n.3 (inverting the default position of § 1782 and requiring that Congress add the word "governmental" before the word "tribunal" to limit that term's scope).

Moreover, in *Intel* the Supreme Court provided no guidance as to whether a purely private arbitral body constitutes a tribunal under § 1782. A reasoned distinction can be made between purely private arbitral bodies and governmental arbitration pursuant to BITs. *See Dubey*, 949 F. Supp. 2d at 994; *cf. In re Oxus Gold PLC*, MISC No. 06-82-GEB, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007) (distinguishing private arbitration from BIT arbitration and finding that § 1782 covers BIT arbitration "conducted within a framework defined by two nations"). *Intel*'s functional analysis defines the type of governmental arbitration subject to § 1782, rather than covering every type of international tribunal imaginable. *See Dubey*, 949 F. Supp. 2d at 994–95.

The Court holds that private international arbitral bodies are not "international tribunals" for purposes of § 1782. Because SIAC is a private arbitral body, the Court lacks the statutory authority to order discovery for use in the SIAC proceeding. Accordingly, to the extent that GOL's discovery application rests on the proceedings before the SIAC, it is denied.[3]

2)  GOL's Discovery Application Is Not "For Use" in a Foreign or International

Tribunal or Criminal Investigation Under § 1782

The Court next addresses whether the discovery sought by GOL prosecutors is "for use" in its criminal investigation, or alternatively any revived BIT arbitration, as required by § 1782. (Opp'n 14–17.) The court finds that it is not. Nothing in the record suggests that a dispositive ruling in either matter is within reasonable contemplation, as required by the Supreme Court in *Intel*. GOL claims that responses to its broad discovery requests are needed for the criminal investigations of Bridge, Jensen, and Baldwin, even though GOL agreed in the Deed of Settlement not to pursue such investigations. It appears that GOL's true intent is not to determine or support criminal liability or prosecution, but rather to use the criminal investigation to obtain discovery for the SIAC proceedings. Yet, even if GOL intends to use the discovery for a criminal prosecution, its discovery request is more of a fishing expedition than a legitimate use of § 1782 to further its pursuit of criminals.

Section 1782 allows an interested person to obtain discovery "for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). However, the authority is not unlimited: adjudicative proceedings need not be pending or imminent for a court to order discovery, but a "dispositive ruling" must "be within reasonable contemplation." *Intel*, 542 U.S. at 259. Likewise, *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago* held that "the determination

---

[3] Based on the forgoing, the Court declines to address Bridge Capital's argument that any discovery obtained for SIAC would not be used by that body, and therefore would not be "for use" in a foreign or international tribunal pursuant to the statute.

to grant assistance turns not on whether the proceeding is pending but on whether the requested evidence will likely be of use in a judicial proceeding." 848 F.2d 1151, 1155 (11th Cir. 1988) *abrogated on other grounds by Intel*, 542 U.S. at 253 n.7 & 260. "[T]he question decisive for proper application of section 1782 [is]: Was there sufficient indication that a proceeding in court would eventuate in which the evidence gathered can be weighed impartially?" *In re Letter of Request from the Crown Prosecution Serv. of the United Kingdom*, 870 F.2d 686, 691 & n.4 (R.B. Ginsburg, J.)

Here, GOL cannot show that a dispositive ruling is within reasonable contemplation. In its application, GOL submitted a letter from its Ministry of Justice requesting the United States' assistance in procuring documents related to its criminal bribery investigation of Baldwin, but made no mention of when a dispositive ruling, or even a decision to prosecute, would be made. (Memo. in Support, Ex. 4 ("GOL Letter"), ECF No. 20-4.) Indeed, GOL suggests that it lacks sufficient evidence to proceed with a criminal prosecution until it can access Bridge Capital's books: "The documents sought will shed light on whether tens of millions of dollars transferred from the Savan Vegas to Bridge Capital and other entities owned by Mr. Baldwin were legitimate or nefarious." (Memo. in Support 8.) Such uncertainty in GOL's criminal investigation fails to show how any dispositive decision could be within reasonable contemplation. *Intel*, 542 U.S. at 259; *see Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 124 (2d Cir. 2015) ("At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.").

GOL's criminal investigation with respect to nonpayment or evasion of taxes likewise fails the statutory test. The Deed of Settlement specifies that the Savan Vegas would pay taxes at a rate to be set by a committee nominated by the parties. (Deed of Settlement ¶¶ 8-9.) Unsurprisingly, because the settlement almost immediately fell apart, the record does not reflect that the new flat tax rate was ever fixed. The tax question accordingly relates to the SIAC arbitration and the

question of breach. In other words, it appears that the future of the investigation into the Savan Vegas' failure to pay taxes depends on the outcome of the SIAC arbitration, and therefore is not in reasonable contemplation. The same is true of the alleged investigation of Baldwin. Because GOL gave up its criminal investigation of Baldwin as a term of the settlement (Deed of Settlement ¶ 23), the matter cannot be reasonably contemplated until the SIAC arbitral body has had its say. *Cf. Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, No. 14 Civ. 9997(CM), 2015 WL 3439220, at *5 (S.D.N.Y. Feb. 5, 2015) (observing that discovery in aid of enforcing an arbitration award that the petitioner has not yet won is no more reasonably contemplated than "a scenario in which I 'reasonably contemplate' buying a new car because I might win the lottery if I decide to buy a ticket on my way to work tomorrow morning").

The Court is troubled by the lack of detail in the GOL Letter, which stands in stark contrast to the sort of requests that have satisfied judicial scrutiny in other cases. In *Trinidad and Tobago*, for instance, the Eleventh Circuit affirmed the district court's grant of assistance because "[w]hen the Minister of Legal Affairs requested the assistance, he set forth the documents he desired, the information he expected to find, and the reason he would use the documents in the eventual proceeding." 848 F.2d at 1156 (noting that the minister had even "requested the production of documents in a particular form to ensure their admissibility in the eventual proceeding," strongly suggesting that such a proceeding would actually commence). Here, the GOL Letter does not refer to what GOL seeks or why it believes the materials sought will be relevant. That lack of specificity—though not a statutory requirement in itself—tends to show that GOL has not reasonably considered how it wishes to proceed, and further undermines its contention that a ruling is within reasonable contemplation.

GOL's untimely assertion that Lao Holdings and Sanum intend to reopen the BIT arbitration fares no better than its criminal investigation on the "reasonable contemplation" test. (Reply 7–8.) At oral argument, Bridge Capital declined to state whether Lao Holdings and Sanum would attempt to revive the BIT arbitration. In the absence of any stated intent to revive the BIT

13

arbitration, let alone any statement on the willingness of the BIT arbitral body to reopen the proceedings while SIAC conducts its own arbitration, there can be no dispositive ruling in reasonable contemplation. *See Jiangsu Steamship*, 2015 WL 3439220, at *5 (denying § 1782 application where petitioner could not identify a proposed foreign forum for any alleged proceeding and essentially sought discovery to "troll[] for assets in U.S. institutions in order to decide whether it is worth [petitioner's] while to commence a London arbitration in the first place").

GOL's application suggests that its true intent in this matter is not to further its alleged prosecution, but to gather evidence to use in the SIAC proceeding. *Cf. Intel*, 542 U.S. at 266 ("no one has suggested that AMD's complaint to the Commission is pretextual"); *Trinidad & Tobago*, 848 F.2d at 1155–56 (noting the absence of evidence that the Minister of Legal Affairs sought discovery "for some reason other than 'for use in a proceeding'"). As GOL admits in its Amended Memorandum, it has known about the facts underlying several of its allegations of bribery against Baldwin for years. (Memo. in Support 3.) GOL's knowledge of those facts, however, did not result in any prosecutorial action following its initial investigation. If GOL truly believed that Bridge Capital, Jensen, Baldwin, or FHB had information pertinent to its criminal investigation, it would have applied for the United States' assistance when it first discovered Baldwin's alleged bribery. The fact that GOL applied for discovery in aid of its criminal investigation only *after* initiating the SIAC arbitration, but before that body released it from its contractual obligations against continuing the investigation, raises doubts about the independence and good faith of that investigation. *Cf. Crown Prosecution*, 870 F.2d at 692 (noting the importance of the district court believing that the evidence sought would actually be used in criminal proceedings, rather than for some other purpose).[4] GOL's impatience to restart the investigation it earlier abandoned may have

---

[4] The Court is not alone in finding an absence of good faith on GOL's part. During the BIT proceedings, the arbitral tribunal observed the "exceptional circumstances" of GOL's conduct and stated that it was "satisfied on the evidence that the primary purpose for which the Respondent [i.e., GOL] intends to use the powers of criminal investigation, at least in the first instance, is to collect evidence for use at the arbitration, which, in the result, will undermine the integrity of the arbitral process." (Opp'n Ex. A-7 ¶ 26 ("BIT Arbitration Order"), ECF No. 31-9.) In fact, the BIT

14

more to do with seeking damaging information for the SIAC arbitration than it does with punishing criminal activity.

Yet even accepting GOL's application at face value, it appears to be nothing more than a fishing expedition. *See Trinidad and Tobago*, 848 F.2d at 1156 ("If the judge doubts the proceeding is forthcoming, or suspects that the request is a 'fishing expedition' or a vehicle for harassment, the district court should deny the request."). In addition to the lack of specifics in the GOL Letter, GOL's proposed subpoena would order the general production of a vast swath of documents, including: all financial records from 2009 to present of transfers between Bridge Capital and Sanum, Sanum and Sean Scott (who was not named in the application), Sanum and Baldwin, Savan Vegas to Scott, Savan Vegas to Baldwin, Sanum to Lao Holdings, any transfers of funds from Savan Vegas to entities outside of Laos, and records related to "JKB Trust." (Proposed Subpoena, ECF 7-1.) Rather than the tailored requests that have garnered favorable treatment in other cases, GOL essentially asks this Court—without any specifics about what it believes it will find—to open wide the books of Bridge Capital and the other respondents. *See Trinidad and Tobago*, 848 F.2d at 1156. Such an intrusion cannot be justified on the flimsy grounds that GOL *may* find evidence of unspecified criminal conduct. *See In re Certain Funds, Accounts and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group LLC*, No. 14 Civ. 1801(NRB), 2014 WL 3404955, at *6 (S.D.N.Y. July 8, 2014) (acknowledging a court's role in "guarding against the potential that parties may use § 1782 to investigate whether litigation is possible in the first place, putting the cart before the horse").

In sum, the Court finds that the discovery sought with respect to the GOL criminal investigation and the purely speculative BIT arbitration revival fails to satisfy § 1782's requirement that it be "for use in a proceeding in a foreign or international tribunal, including

---

tribunal took the extraordinary step of denying GOL's request to allow it pursue its criminal investigation during the pendency of the arbitration. (*Id.* at ¶ 76.)

criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). The application is denied.

### C. Discretionary Factors Weigh Against GOL's Application

Because the threshold statutory requirements for granting GOL's application have not been met, the Court must deny the application. However, even if the requirements were satisfied—if the SIAC arbitral body were an international tribunal, or if the discovery sought would be "for use" in GOL's criminal investigation, or even if the BIT arbitration were to be reopened—the Court would nevertheless decline to grant GOL's application as a matter of sound discretion. *See Intel*, 542 U.S. at 264 ("a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so"). The Supreme Court has highlighted several nonexclusive factors for courts to consider in exercising their discretion to grant § 1782 applications: (1) whether the respondents are participants in the foreign proceeding; (2) "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." 542 U.S. at 264–65.

The first factor weakly favors granting the application because the respondents are not participants in the underlying proceedings, not even the potentially revived BIT arbitration. However, because most of the discovery sought actually concerns records that would be held by the Savan Vegas, Sanum, and Lao Holdings (Proposed Subpoena), the rationale of the first factor—i.e., the need for foreign discovery that would otherwise be unavailable—is significantly lessened. *See Intel*, 542 U.S. at 264. The exception, of course, would be the criminal investigation.

The second factor weighs against discovery because both SIAC and the BIT tribunals (in the prior proceeding) have suggested that GOL's § 1782 application is unhelpful. For instance, the

SIAC panel asked GOL to defer its § 1782 "action until the final hearing in this arbitration" and warned that "[i]ts failure to do so will be taken into consideration should this Tribunal conclude that [GOL] has breached the Deed [of Settlement] by filing the action." (Opp'n Ex. A-11 ¶ 16(f) ("SIAC Order"), ECF No. 31-13.) Similarly, before the parties agreed to settle the BIT arbitrations, the BIT tribunal denied a motion by GOL to allow its criminal investigation to move forward because the investigation was essentially motivated by bad faith. (BIT Arbitration Order ¶¶ 25-31, 27 (GOL's "position is that while the criminal investigation may (or may not) generate sufficient evidence to initiate criminal charges, any evidence turned up by the investigation of assistance to [GOL's] case in the arbitration will be so used.").) In each case, the arbitral body worried that allowing GOL to use its position as a sovereign prosecuting body to obtain more discovery than it would otherwise be entitled to would damage the integrity of the arbitration. (*Id.* ¶ 26; SIAC Order ¶ 16(d), (f).) It is unlikely that either the SIAC panel or a reconstituted BIT tribunal would favorably view GOL's actions in obtaining any discovery in this case, and they would likely exclude any such evidence sought to be admitted. *Cf. Optimal Inv. Servs., S.A. v. Berlamont*, 773 F.3d 456, 461 (2d Cir. 2014) (approving a § 1782 application and noting that the magistrate investigating criminal activity in Switzerland "has explicitly stated that the [requested] documents would be 'of great usefulness to [his] inquiry'" (first bracket added)). With respect to the alleged criminal investigation, because the Court finds that the motivating factor is winning civil litigation rather than discovering and punishing criminal conduct, the second factor also weighs against granting the application. *See Intel*, 542 U.S. at 264 (emphasizing the importance of the "character of the proceedings underway abroad"). GOL would obviously be "receptive" to the Court granting its request, but not for a justifiable purpose. *Id.*

The third factor also favors denying the application. According to Bridge Capital, GOL never sought discovery through the SIAC tribunal, even though, as the Court has noted, many of the materials sought are likely in the possession of the Savan Vegas, Sanum, or Lao Holdings. (Opp'n 23.) In its Reply, GOL argues that, because the respondents are not parties to the underlying

litigation, the SIAC tribunal lacked jurisdiction to order discovery. (Reply 12.) That statement is misleadingly incomplete. Many of the materials sought from the respondents—particularly the financial records of transfers between the respondents and the Savan Vegas, Sanum, and Lao Holdings—may likely be obtained from those entities. Of course, had GOL attempted to obtain the records through the means readily at its disposal, it would know whether the materials existed with the Savan Vegas, Sanum, or Lao Holdings. However, it appears that GOL never bothered to pursue any discovery through the SIAC proceedings. (Opp'n 23.) Although *Intel* created no requirement that a party exhaust foreign discovery resources before seeking district court aid pursuant to § 1782, GOL's failure to make any move on discovery other than through this Court again serves to make this matter look more like harassment than discovery in aid of a legitimate criminal investigation. *See In re Digitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007) (weighing the third factor against an applicant that had not pursued any discovery in the foreign proceeding, despite many years in which to do so).

The fourth factor also favors denying the application. The proposed subpoena would have the effect of opening the respondent's books to GOL on little more than unsupported allegations of wrongdoing. As noted, the requests ask for a vast swath of documents from a range of sources, including an individual's trust. Granting the subpoena in any form would work an abuse on the respondents. *See Intel*, 542 U.S. at 265.

The Court is also particularly swayed by GOL's seeming disregard for the Deed of Settlement. In June 2014, GOL was apparently satisfied that Baldwin and other owners and managers at the Savan Vegas were not criminals. It agreed not to prosecute them as part of the settlement. Despite the failure of the settlement to actually resolve the issues facing the Savan Vegas, the parties agreed to be bound by its terms, including non-prosecution. To be clear, no neutral arbiter—neither BIT nor SIAC—has yet ruled on the breach claim or permitted either side to escape its obligations. But that has not stopped GOL from reinstating the investigation against Baldwin and the other owners and managers of the Savan Vegas.

GOL is a sovereign nation, and may prosecute its laws and interpret its agreements as it sees fit. But this Court is not required to help.

## IV.    CONCLUSION

For the forgoing reasons, it is hereby ORDERED that:

1.  GOL's application (ECF No. 1) is denied;

2.  Bridge Capital's motion to strike (ECF No. 37) is granted, and GOL's submission of supplemental evidence (ECF No. 36) is stricken;

3.  GOL's motions for leave to file supplemental evidence (ECF Nos. 39 and 41) are denied.


SO ORDERED this 7th day of April, 2016.


HEATHER L. KENNEDY
Magistrate Judge